UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GUY WICHERT,<br>Plaintiff,<br><br>v.<br><br>DEEP SEA FISH OF<br>RHODE ISLAND, INC., and<br>SILHOUETTE TRAWLERS, INC.,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CA 07-136 S |

**MEMORANDUM AND ORDER**
**DENYING MOTION TO BIFURCATE**

Before the Court is Plaintiff's Motion to Bifurcate and for an Immediate Trial on the Issue of the Daily Rate of Maintenance Pursuant to F.R.C.P. 21 (Document ("Doc.") #7) ("Motion to Bifurcate" or "Motion"). A hearing was held on July 27, 2007.[1] For the reasons stated herein, the Motion is denied.

**Background**

Plaintiff alleges that he was injured on or about November 29, 2006, while employed as a seaman aboard the F/V Huntress. See First Amended Complaint (Doc. #2) ("Amended Complaint") ¶¶ 5, 22. He further alleges that his employer was both Defendant Deep Sea Fish of Rhode Island, Inc. ("Deep Sea Fish"), see id. ¶ 5, and Defendant Silhouette Trawlers, Inc. ("Silhouette"), see id.

---

[1] Following the hearing, the Court initially held the Motion in abeyance for two weeks. Defendants' counsel had suggested at the hearing that if the parties were given time to confer they might be able to resolve the matter, and Plaintiff's counsel did not disagree with this suggestion. See Tape of 7/27/07 Hearing. Plaintiff's counsel subsequently advised the Court that no settlement had been reached and that Plaintiff continued to press the Motion. See Letter from O'Keefe to Martin, M.J., of 8/10/07 (Doc. #18). Thereafter, the Court took the Motion under advisement.

¶ 22.[2] Plaintiff claims that as a result of his injuries he is unable to work as a crew member on a fishing vessel which is his usual occupation. See Amended Complaint ¶¶ 8, 25. His Amended Complaint contains two counts for maintenance and cure (Count I against Deep Sea Fish and Count IV against Silhouette), two counts asserting a claim under the Jones Act (Count II against Deep Sea Fish and Count V against Silhouette), and two counts alleging a breach of warranty of seaworthiness (Count III against Deep Sea Fish and Count VI against Silhouette).

By the Motion, Plaintiff seeks to sever Counts I and IV and to have an immediate trial on the issue of the daily rate of maintenance. See Motion. Defendants have filed an opposition to the Motion. See Defendants' Opposition to Plaintiff's Bifurcation Motion ("Defendants' Opp.") (Doc. #11).

**Law**

"In deciding whether to sever a maintenance and cure claim, courts consider the plaintiff's interest in an expedited trial of these issues, the proximity of the scheduled trial date, whether Plaintiff has requested a jury trial and whether the nonmoving party opposes the motion." Cooper v. Nabors Offshore, Inc., No. Civ.A. 03-0344, 2003 WL 22174237, at *1 (E.D. La. Sept. 9, 2003). Considerations of efficiency and judicial economy also play a role in the Court's calculus. See Marine Drilling Mgmt. Co. v. Scott, No. Civ.A. 02-1967, 2003 WL 133218, at *1 (E.D. La. Jan. 15, 2003)(finding that "efficiency and judicial economy weigh against the severance [movant] seeks" where non-movant opposed severance and there was a likelihood that the same physicians would testify at both trials).

---

[2] Deep Sea Fish denies that it employed Plaintiff, see Defendants' Answer to Plaintiff's First Amended Complaint (Doc. #9) ("Answer") ¶ 5, while Silhouette admits "that on November 29, 2006, the plaintiff served as a seaman aboard the F/V HUNTRESS I, which is owned by defendant Silhouette Trawlers, Inc.," id. ¶ 22.

**Discussion**

Defendants oppose the Motion on the ground that the maintenance issue and the issue of damages under the Jones Act and general maritime law for unseaworthiness are so intertwined that it would be prejudicial, expensive, and a waste of judicial resources and time to bifurcate the trial. See Defendants' Opp. at 3. In support of this contention, Defendants make the following arguments.

First, they point out that Plaintiff did not seek immediate medical attention after he was allegedly injured aboard the vessel. See id. at 2. According to Defendants, Plaintiff was brought to the emergency room of Kent Hospital the next day, November 30, 2006, for an opiate overdose, "after being found 'down' cyanotic inside a car at a convenience store." Id. They note that Plaintiff apparently complained at that time of chest pain and not back pain. See id. Citing the medical records which Plaintiff has apparently submitted, Defendants observe that Plaintiff's first complaint of back pain occurred on December 20, 2006, when he was seen by Dr. Martin Kerzer, D.O. See id. According to Defendants, Dr. Kerzer diagnosed Plaintiff with cervical and lumbar sprain and strain, right sciatic radiculopathy, rib contusion, and facial contusions and abrasions. See id.

Second, Defendants argue that despite Plaintiff's claim of continuing back problems, Plaintiff has failed to appear for numerous medical appointments. See id. They attach as an exhibit to their opposition a record dated February 26, 2007, from Rhode Island Rehabilitation, P.C., which states that Plaintiff's attendance has been "very poor ... having missed 8 of 14 visits since his [initial evaluation] on 1/10/07," id., Exhibit ("Ex.") B. Defendants also note that Plaintiff told Dr. Kerzer on March 6, 2007, that he had "missed a couple of

appointments with RI Rehab because he had to drive to Michigan to help his mother with her husband's illness." Defendants' Opp., Ex. C. They state that maintenance is not due for the period where a seaman's disability is excluded because of his unreasonable refusal to accept treatment. See id. at 4 (citing Cargo Ships & Tankers, Inc. v. McDonald, 435 S.W.2d 866, 872 (Tx. App. 1969)(stating that right to maintenance and cure "ceases ... when the seaman has reached his maximum recovery or ceases to avail himself of curative treatment")).

Third, Defendants contend that Plaintiff has suffered from pre-existing back and chest injuries. See id. at 3. In support of this statement they cite a hospital report dated August 2, 2004, see id., Ex. D, which indicates that Plaintiff fell from the second floor to the first floor. They also cite an August 11, 2004, MRI report which indicates preexisting back injuries, including facet joint disease, disc bulging, degenerative changes, and disc herniation. See id., Ex. E. Defendants additionally note that Plaintiff was involved in a motor vehicle accident in 2005. See id. at 3.

Fourth, Defendants assert that Plaintiff is a fugitive from justice. See id. To support this assertion, Defendants have submitted a copy of a document which appears to indicate that a warrant for Plaintiff's arrest was issued in the Rhode Island Superior Court on March 23, 2007, apparently because he failed to appear for a cost review proceeding on March 21, 2007. See id., Ex. F at 7. Defendants note that maintenance is not due for periods when a seaman is incarcerated, and they argue that in light of the outstanding bench warrant Plaintiff is not entitled to any maintenance. See id. at 4.

Finally, Defendants observe that as of the date they filed their opposition the amount of money "currently in contention at plaintiff's proposed trial is a maximum of $3,240." Id. at 2.

They suggest that the relative smallness of this sum weighs against granting the Motion.

Plaintiff in his memorandum criticizes Defendants for not paying maintenance after his prior counsel sent a letter of representation on January 10, 2007, and included in that letter reports from his treating physicians. See Memorandum of Points and Authorities in Support of Plaintiff Wichert's Motion for an Immediate Trial ("Plaintiff's Mem.") at 2.[3] He complains that it was not until his present counsel "made a specific demand for maintenance that maintenance was paid retroactively ... albeit at the rate of $15.00 per diem." Id. This amount, Plaintiff contends, is not based on his actual expenditures, and he cites two cases from this Court where higher rates have been set. See id. (citing Riberdy v. F/V Debbie Sue, C.A. No. 02-89 ML, and Ronan v. LNA, Inc., C.A. No. 91-256 L)). Plaintiff notes that other courts have resorted to an immediate bench trial. See id. at 3 (citing Tate v. American Tugs, Inc., 634 F.2d 869, 871 (5th Cir. 1981)(stating that a seaman after filing suit may ask for severance of his claim for maintenance from his Jones Act claim)). Plaintiff concludes his argument in support of the instant Motion by stating that "since Mr. Wichert has to go to Court to collect what is plainly due him, he is entitled to attorneys' fees and punitive damages in addition." Id. (citing Robinson v. Pocahantas, 477 F.2d 1048, 1051 (1st Cir. 1973) (noting Supreme Court's holding in Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997 (1962), "that a seaman could recover attorneys' fees as damages where a shipowner was callous, willful, or

---

[3] The pages of Plaintiff's memorandum are not numbered. See Memorandum of Points and Authorities in Support of Plaintiff Wichert's Motion for an Immediate Trial ("Plaintiff's Mem."). Plaintiff's attention is directed to DRI LR Cv 5(a)(3): "Where a document is more than one page in length, the pages shall be numbered at the bottom center of each page."

recalcitrant in withholding these payments”).

**Conclusion**

Applying the relevant considerations, this Magistrate Judge concludes that they weigh substantially against granting the Motion. To the best of this Magistrate Judge’s knowledge, the trail calendar of District Court Judge William Smith, to whom this case is assigned, is reasonably current. Indeed, it is this Magistrate Judge’s understanding that if the parties wish an expedited trial date, they may communicate such request to Judge Smith and it will be considered by him. Defendants’ contention that Plaintiff’s claim for maintenance is intertwined with his Jones Act and general seaworthiness claims is well supported, and the Court agrees that it would be a poor utilization of judicial resources and time to bifurcate the trial. In reaching this conclusion, the Court is especially influenced by the fact that both trials would require testimony from the same doctor. Finally, Plaintiff has requested a jury trial, see Amended Complaint at 11, and this consideration also weighs against granting the Motion. To the exent that Plaintiff is seeking only a bench trial on the issue of the daily rate of maintenance, the Court does not find this circumstance sufficient to alter its ruling.

Accordingly, Plaintiff’s Motion to Bifurcate is DENIED.

So ordered.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
October 17, 2007