**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **GUY WICHERT**<br>**Plaintiff,**<br><br>**vs.**<br><br>**DEEP SEA FISH OF RHODE ISLAND, INC.**<br>**Defendant**<br><br>**and**<br><br>**SILHOUETTE TRAWLERS, INC.**<br>**Defendant** | ) | **C.A. NO.: 2007-136-S-DLM** |

**DEFENDANTS' PRETRIAL MEMORANDUM**

Now come the defendants in the above captioned matter and respectfully file their pre trial memorandum.

**A. (2) Defendant's Statement of its Position:**

On November 29, 2006, the defendant Silhouette Trawlers owned, operated and controlled the F/V HUNTRESS I, a commercial fishing vessel, inspected and approved by the United States Coast Guard. Prior to the plaintiff's alleged incident, the physical structure of the vessel, including the vessel's cleats, were inspected and approved by the United States Coast Guard as well as private marine surveyors and found to be in compliance with all applicable standards and regulations. The vessel also complies with all relevant customs and practices in the industry.

Silhouette Trawlers dispatched the F/V ST. JUDE to tow the F/V HUNTRESS I after the F/V HUNTRESS I sustained a main shaft failure off the Delaware Coast. When the vessels were approximately one (1) mile from the Point Judith Harbor of Refuge, the F/V ST. JUDE attempted to make up alongside the F/V HUNTRESS I, for close quarters towing. With the captains of the two vessels located in their respective wheel houses, the crew of the F/V HUNTRESS I decided

to utilize a small utility cleat to secure a line between the two vessels. The plaintiff alleges that the force of the two vessels working against each other pulled the cleat from its mount, first striking another crewmember and then striking the plaintiff in the ribs. To the defendants' knowledge, the alleged incident was unwitnessed. The defendant respectfully asserts that this situation is indicative of the plaintiff's own negligence in causing his incident. As an experienced fisherman, the plaintiff should have selected a much larger cleat that was located only feet away from the cleat the plaintiff selected.

At deposition, the plaintiff testified that following the incident he was largely bed-ridden until the vessel returned to port:

Q. Take me through this now. The boat comes into the dock, you're in your bunk?

A. I was either in the bunk or on the couch in the galley, one or the other…I tried to hobble around some. I got helped up the stairs for a minute, sat and talked with Renny sitting on his couch in the wheelhouse. Then after that, he said go down in your bunk until we get in….I was incoherent and in a lot of pain…. (Plaintiff's deposition p105, ll. 21-24; p.106, ll. 3-7; p. 106, ll. 11-12.)

The plaintiff's testimony of significant pain and confinement to his bunk is directly refuted by a video tape the plaintiff himself took following the incident. While operating a video camera, the plaintiff roams the vessel, joking and laughing with his fellow crewmembers, mocking the Coast Guard who had come to tow the disabled vessel and generally exhibiting a demeanor inconsistent with an injury.

When the vessel arrived in port, the plaintiff refused medical attention and departed the vessel. On the day following the incident, he was transported to the emergency room for a drug overdose, after he was found unconscious in an automobile in a convenience store parking lot. The plaintiff has a long and well-documented history of abusing heroin, cocaine, prescription drugs and other "street" drugs. While in the emergency room, the plaintiff complained of rib pain

as a result of an incident aboard the vessel. The emergency room physician instructed him to take Tylenol and avoid heavy lifting.

Prior to seeking further medical attention, the plaintiff retained counsel, who referred him to Dr. Kerzer. On December 20, 2006, three weeks after the alleged incident, the plaintiff first saw Dr. Kerzer, who diagnosed a rib contusion and back strain. Dr. Kerzer referred the plaintiff to physical therapy.

However, the plaintiff failed to attend the majority of his scheduled physical therapy session. On February 28, 2007, the defendants' interests were contacted by Rhode Island Rehab, complaining that the plaintiff had missed more appointments than he had attended. At deposition, the plaintiff testified that he missed the appointments because a combination of pain and the effects of pain medicine rendered him incapable of driving. However, this testimony is directly refuted by the fact that the plaintiff drove to Michigan during this very time frame.

On November 4, 2007, the plaintiff was involved in a motor vehicle accident. The hospital drug screen noted that the plaintiff had cocaine, opiates, methadone and cannabis in his system. On November 16, 2007, the plaintiff's treating physician issued a report opining that there was a direct causal relationship between the plaintiff's "present clinical condition" and the motor vehicle accident of November 4, 2007.

The defendants respectfully assert that the plaintiff's claim of personal injuries must be assessed in light of the plaintiff's prior injuries. For example, less than 15 months prior to the alleged incident aboard the vessel, the plaintiff was found unconscious following an automobile accident. The medical records indicate that heroin needles where found next to the plaintiff and "track marks" were present on his body. Preexisting MRI and radiographic reports, compared to the MRI report following the alleged incident aboard the vessel, clearly establish that there is no objective evidence that the plaintiff sustained injury aboard the vessel.

The defendants respectfully assert that the plaintiff's claims for damages must be assessed in light of the plaintiff's persistent and well-documented drug abuse. For example, medical

records from 1993 indicate that the plaintiff illegally purchases prescription vivoden “on the street.” Medical records from April 5, 2003, indicate the plaintiff was found on the sidewalk after a heroin overdose. Medical records from October 2003 indicate that the Warwick Police brought the plaintiff to Kent Hospital for drug testing. Medical records from December 2003 indicate the plaintiff overdosed on heroin. Medical records from March 2005 indicate the plaintiff overdosed while driving an automobile. Medical records from September 23, 2005, indicate the plaintiff again overdosed while driving an automobile. Medical records from October 2005 indicate that the plaintiff is a recent intravenous drug user. On November 30, 2006, the plaintiff was seen in the emergency room for an opiate overdose. On February 2007, the plaintiff was treated for a prescription drug overdose. On November 4, 2007 he was treated in the emergency room following an automobile accident. The toxicology screen indicated that the plaintiff was under the influence of cocaine, opiates, methadone, and cannabis.

The defendant respectfully asserts that the plaintiff’s claims for damages must be assessed in light of his poor work history. His alleged injury occurred during his first trip aboard the F/V HUNTRESS I. Prior to serving aboard the F/V HUNTRESS I, he was briefly employed by Fred Matera aboard another fishing vessel but that employment was terminated when the plaintiff was arrested while on the job because of an outstanding warrant. Incarceration and home confinement due to violent crime preceded this employment. The plaintiff has not filed tax returns. The defendant respectfully asserts that the plaintiff cannot prove ANY lost wages, and that this may be the subject of a motion in limine. (Defense counsel has discussed the issue with plaintiff’s counsel who has verbally agreed that he is not pursuing a claim for lost wages so that a motion in limine may not be necessary).

The defendant has settled the plaintiff’s claims for maintenance and cure and the Release is attached as an exhibit hereto.

**Defendants’ Witnesses**

1. Representative of the United States Coast Guard. Expected to testify as to inspection of the vessel and compliance with all regulations and customs and practices in the industry.

2. Neil Stoddard, Marine Safety Consultants, Taunton, MA. Expected to testify to private marine safety surveys and vessel's compliance with all regulations and customs and practices within the industry.

3. Eric Reid, Silhouette Trawlers, Wakefield, Rhode Island. Expected to testify as to inspection of the vessel and compliance with all regulations and customs and practices in the industry. Expected to testify as to appropriateness of fishing vessel towing disabled vessel. Expected to testify as to availability of a larger, appropriate cleat and plaintiff's contributory negligence.

4. Renny Archembault. Expected to testify as to inspection of the vessel and compliance with all regulations and customs and practices in the industry. Expected to testify as to appropriateness of fishing vessel towing disabled vessel. Expected to testify as to availability of a larger, appropriate cleat and plaintiff's contributory negligence. Also expected to testify as to his observations of plaintiff following the alleged incident. Specifically, that the plaintiff was laughing, joking, mocking the Coast Guard and did not appear injured.

5. Tom Donovan, Captain St. Jude. Expected to testify as to appropriateness of fishing vessel towing disabled vessel. Expected to testify as to availability of a larger, appropriate cleat and plaintiff's contributory negligence. Also expected to testify as to his observations of plaintiff following the alleged incident. Specifically, that the plaintiff was laughing, joking, mocking the Coast Guard and did not appear injured.

6. Fred Mattera. Expected to testify as to plaintiff's very brief employment aboard his vessel. Also expected to testify that the plaintiff's employment was terminated following his arrest while on the job. Also, that he was on the verge of firing the plaintiff for poor performance irrespective of the aforementioned arrest.

7. Custodian of Records plaintiff's medical providers, including medical providers referenced above.

8. Dr. Fred Johnson (Medical Expert Witness). Will testify based on objective evidence that the plaintiff did not sustain a serious spinal injury aboard the vessel.

9. Crew of the F/V HUNTRESS I.

10. Crew of the F/V ST. JUDE.

11. Dave Mink, Expected to testify as to surveillance of plaintiff.

**B. Defendant's Supporting Law**

**Jones Act Negligence**

Under the Jones Act, seamen are afforded rights parallel to railway employees under the Federal Employers' Liability Act ("FELA"). 46 U.S.C. § 688. Section 51 of the FELA provides in pertinent part that "[e]very common carrier by railroad …shall be liable in damages …for injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier." 45 U.S.C. § 51.

Therefore, a seaman is entitled to recover under the Jones Act, if he is able to prove, by a fair preponderance of the credible evidence, that his employer's negligence is the cause, in whole or in part, of his injury.

The statutory phrase, "in whole or in part" modifies only the causation prong of the Jones Act inquiry. The phrase does not modify the word "negligence." Thus, the duty of care owed by the employer, under normal rules of statutory construction, retains the usual and familiar definition of ordinary prudence, and not a higher standard. Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997).

The Jones Act requires a vessel owner to exercise reasonable care in providing a seaman with a reasonably safe place to work. This standard of reasonable fitness is necessarily flexible. An employer must have notice and an opportunity to correct an unsafe condition before liability

attaches. See Saleh v. U.S., 849 F.Supp. 886 (S.D.N.Y. 1994); see also Colburn v. Bunge Towing, Inc., 883 F.2d 372, 374 (5th Cir. 1989).

**Unseaworthiness Under the General Maritime Law**

The plaintiff has the burden of proving by a fair preponderance of the credible evidence, that an unseaworthy condition of the ship proximately caused his injury. To be considered seaworthy, the vessel must be reasonably fit for its intended purpose. The standard is not perfection, but reasonable fitness for the intended service. Mahnich v. Southern S.S. Co., 321 U.S. 96 (1944). "[T]he mere fact that a seaman is injured in an accident on the vessel is not sufficient, in and of itself, to establish unseaworthiness and consequent liability. The owner does not have to provide an accident-free vessel. It has a duty only to furnish a vessel and appurtenances reasonably fit for their intended use." Thorton v. Deep Boats, Inc., 399 F.Supp. 933, 936 (S.D. Al. 1975).

The standard of causation in an unseaworthiness claim is stricter than for a Jones Act claim of negligence. Causation in unseaworthiness requires a showing of proximate cause in the traditional sense. Comeaux v. T.L. James & Co., 702 F.2d 1023 (5th Cir. 1983).

**Contributory Negligence**

Under the Jones Act and general maritime law , a seaman has a duty to use reasonable care for his own safety. This involves use of his own experience, training and education. Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, (5th Cir. 1997); Thezan v. Maritime Overseas Corp., 708 F.2d 175 (5th Cir. 1983).

Typically, the plaintiff's contributory negligence will reduce his damages by the proportion of his contributory negligence. Villers Seafood Co. v. Vest, 813 F.2d 339 (11th Cir. 1987). However, a seaman will be barred from any recovery, where the condition causing his injury was caused solely by the plaintiff's negligence or breach of his "primary duty" to maintain a safe ship. Walker v. Lykes Brothers S.S. Co., 193 F.2d 772 (11th Cir. 1952).

**Punitive Damages**

The defendant has settled the plaintiff's claims for maintenance and cure (including punitive damages) and therefore the count for punitive damages is no longer extant. In any event, punitive damages are not legally cognizable under the facts *sub judice*.

Under the United States Supreme Court's analysis prescribed in Miles v. Apex Marine Corp., an admiralty court may not extend the remedies available under general maritime law beyond what is cognizable under the congressionally mandated statutory scheme of the Jones Act. 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). The Jones Act does not provide for punitive damages, and therefore, the same cause of action under the general maritime law for the alleged failure to pay maintenance and cure cannot provide punitive recovery, even if willfulness is demonstrated. Guevara v. Maritime Overseas Corp., 59 F.3d 1495 (9th Cir. 1995); Glynn v. Roy Al Boat Management Corp., 57 F.3d 1495 (9th Cir. 1995); Horsley v. Mobil Oil Corp., 825 F.Supp. 424 (D. Mass. 1993); Clancy v. Mobil Oil Corp., 906 F.Supp. 42, 1996 A.MC. 272 (D. Mass. 1995).

**C. The Defendant's Exhibits**

In addition to those documents listed by the plaintiff, the defendant reserves the right to introduce the following documents:

a. Plaintiff's deposition transcript

b. Earnings records including IRS documents and Notice of Levy

c. Exhibits marked at depositions

d. The plaintiff's complete medical records, including medical records referenced above

e. The plaintiff's medical records regarding prior and subsequent incidents

f. The plaintiff's records regarding drug abuse

g. Records regarding criminal convictions

h. Photographs of the vessel

i. Report of Dr. Johnson

j. Surveillance video

l. Video taken by plaintiff following alleged incident

m. Records showing payment of various medical bills by defendant, if necessary

n. Records showing payments of living stipend by defendant, if necessary

o. Expert's curriculum vitae

p. USCG certificate of inspection

q. Vessel surveys

r. License of Master

s. Settlement Sheets

t. Crew Agreement

**D. Motions in Limine**

The defendant respectfully reserves the right to file a motion in limine that the plaintiff be precluded from adducing evidence concerning lost wages. The Plaintiff's attorney has verbally agreed that he is not claiming lost wages and as such the motion in limine may not be necessary.

**E. Proposed Jury Instructions**

Please Document Number 47, electronically filed September 5, 2008.

**F. Statement as to the Length of Trial**

The defendant anticipates five (5) full days of trial.

**G. Additional Relevant Material**

The defendant does not have any additional relevant material to present at this time.

**H. Material to be Filed Under Seal**

The defendant does not have any materials to be filed under seal.

Dated: 5 September, 2008

Respectfully submitted,
By its attorney,

/s/ Robert J. Murphy
Robert J. Murphy
HOLBROOK & MURPHY
238-240 Lewis Wharf
Boston, MA 02110
(617) 428-1151

**Certificate of Service**

I hereby certify that on September 5, 2008, I electronically filed Defendants' Pre-Trial Memorandum with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Robert J. Murphy
Robert J. Murphy
HOLBROOK & MURPHY
238-240 Lewis Wharf
Boston, MA 02110
(617) 428-1151